Hillsborough,
No. 5391.

STATE *v.* JOHNNY LEE CRUMP.

Argued December 7, 1965.
Decided February 28, 1966.

*William Maynard,* Attorney General, *George S. Pappagianis,*
Deputy Attorney General, *Emile R. Bussiere,* county attorney
( *Mr. Pappagianis* orally ), for the State.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Theodore Wad-
leigh* ( *Mr. Theodore Wadleigh* orally ), for the defendant.

KENISON, C. J. Indictment charging the defendant with illegal
possession of narcotic drugs in violation of the Uniform Narcotic
Drug Act. RSA 318-A:2, 26 ( supp ); Laws 1963, 276:1; Annot.
91 A.L.R. 2d 810. Defendant's motion to suppress evidence on
the ground it was obtained by illegal search and seizure was
denied in a pre-trial hearing by *Grimes,* J. A motion for dis-
covery and an opportunity to analyze the narcotic drugs in the
possession of the State was granted. Defendant's motion to sup-
press the evidence was renewed at the trial and denied by *Lough-
lin,* J. After the defendant filed a written waiver of a jury trial
( RSA 606:7 ), he was tried by the· Court ( *Loughlin,* J. ) and
found guilty. The defendant's exceptions were reserved and trans-
ferred.

On August 4, 1964 sometime between 8:15 and 8:30 P. M. an informer called at the home of an officer of the city of Manchester police department and told him the defendant had produced and opened a brown paper bag in which the informer saw "packets of wax paper with some white substance in them." The informer told the officer that the defendant offered to sell him narcotics. The informer also advised the police officer that if they went to 183 Turner Street in the city of Manchester they would find the defendant with narcotics. The police officer contacted headquarters, and with two other officers sent to meet him at his home, proceeded to 183 Turner Street, where they found the defendant and two others, including the informer. The defendant was standing on the driver's side of the informer's automobile engaged in conversation. All were arrested. No narcotics were found on the defendant. The defendant was taken to the police station where the police were told by the informer that a few minutes prior to the arrival of the arresting officers a motorcycle policeman had passed 183 Turner Street and the defendant had gone into the doorway of 183 Turner Street until the motorcycle officer had passed when the defendant was called back into the street by the informer. The informer advised the police that an acquaintance of the defendant lived on the second floor of 183 Turner Street, and that the defendant might have gone into that apartment when the motorcycle policeman appeared.

The police obtained a search warrant for the second floor of 183 Turner Street and returned there at about 9:30 P. M. Two of the officers were proceeding to the second floor apartment of the defendant's acquaintance while a third officer was assigned to look outside 183 Turner Street and in the first floor hallway. This third officer was the last one in the building and as he took two or three steps inside the open front door of the building and to the left of the door he saw a brown paper bag sticking outside the top of a mail box attached to the wall. There were three names on the mail boxes, none of which was that of the defendant who did not live there.

The officer took the brown paper bag out of the mail box. The bag contained eleven packets consisting of 162 individual wax paper slips containing a white substance. Spectrophotometric analysis of some of the slips showed the presence of heroin in the white substance and a quantitative analysis of two samples indicated approximately fifty per cent heroin.

On cross-examination the officer who found the paper bag and

its contents described his discovery in the following language: "I stepped into the hallway, and to my left there was a series of mail boxes, and in one of the mail boxes at eye level there was a brown bag sticking out of the open box. . . . Q. What I want to know, if you remember, Mr. Weymans, when you walked through the doorway to enter that hallway, did you find the paper bag immediately or did you make a search somewhere else before you found it? A. No, I did not search anywhere else. My eyes fell on it as I walked in. Q. What's that? A. I saw it as I walked in. Q. So that from the time you walked in the doorway and had taken the paper bag out of the mail box only a few seconds had expired? A. Roughly. Q. You, yourself, made no search of any other area? A. I didn't have to. Q. Well, you didn't? A. No."

The record supports the proposition that the Manchester police had probable cause to arrest the defendant for the felony of possessing narcotic drugs. RSA 318-A:2, 21 ( supp ); Laws 1963, 276:1; Annot. 91 A.L.R. 2d 810. This informer was considered reliable because the information he gave the Manchester police had "checked out to be just as he said" on "over a dozen individual items" within a few months of the defendant's arrest. The informant testified and was subject to cross-examination so that any weakness, prejudice or pecuniary motive in his testimony could be exposed. While it is true that the narcotic drugs were not on the defendant's person at the moment of arrest, there was ample evidence to warrant the finding that the narcotic drugs discovered in the brown paper bag had been in his possession only a few minutes before his arrest. We conclude the arrest was valid.

The defendant contends that even if the arrest was valid, the narcotics were procured by an illegal search and seizure. *Henry v. United States,* 361 U. S. 98; *Stoner* v. *California,* 376 U. S. 483; *Beck* v. *Ohio,* 379 U. S. 89. While a search remote in time or place from the arrest is not considered a valid contemporaneous search incident to the arrest ( *Preston* v. *United States,* 376 U. S. 364, 367 ), that is not this case. "There is no war between the Constitution and common sense." *Mapp* v. *Ohio,* 367 U. S. 643, 657. And common sense tells us that the police are not required to be blind to what is obvious to the naked eye or to ignore visible contraband in open or plain view. *Ker* v. *California,* 374 U. S. 23, 43; *State* v. *Baron,* 106 N. H. 149, 151; *State* v. *Coolidge,* 106 N. H. 186, 191. It is not an unreasonable

search to observe that which is open to view. See *People* v. *Davis,* 33 Ill. 2d 134. Nor is it an unreasonable seizure for a police officer to pick up a bloody knife, a hot pistol or narcotics in a place he has a right to be and at a time that is reasonably related to the arrest in time and place. *People* v. *Cockrell,* ( Calif. ) 408 P. 2d 116 ( 1965 ).

The facts of the present case are quite different in kind and degree from *James* v. *Louisiana,* 86 S. Ct. 151 ( 1965 ), where the defendant, arrested on the street, was taken to his home where the police "broke open the door and for several hours conducted an intensive search" for narcotics. In this case the narcotics in a brown paper bag, both visible and suspicious, were observed and removed by the police from the top of a mail box ( not belonging to the defendant ) inside the open front door of a first-floor hallway of a tenement building where the defendant did not reside but which he had entered shortly before his arrest. In the circumstances of this case, we conclude that the narcotic drugs were not obtained by an unreasonable search and seizure proscribed by the Constitution of this state or of the United States. *State* v. *Coolidge,* 106 N. H. 186, 191. See Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 ( 1965 ).

The defendant contends that the search warrant for the second floor of 183 Turner Street was not validly issued or signed and that it conferred no right to search the open hallway on the first floor. The warrant was not executed by the two officers on the second floor because they were notified that the narcotics were discovered by the officer on the first floor. The search warrant is not relied upon by the State and for the purposes of this decision its validity is not in issue.

The State contends that the defendant has no standing to raise the question of illegal search and seizure because he did not live at 183 Turner Street and had no legitimate interest in the premises. This contention rests on a slender reed which will not bear the weight of *Jones* v. *United States,* 362 U. S. 257 and we reject it.

*Exceptions overruled.*

All concurred.